Argued and submitted November 5, 1997; resubmitted En Banc May 6, 1998

# Richard GRADY,
## *Appellant,*

*v.*

# CEDAR SIDE INN, INC.,
## Garold J. Settje and Shirley E. Settje,
## dba Mini-Mart of Vernonia,
## *Respondents.*

# (C9508-47CV; CA A94545)

963 P2d 36

Clayton H. Morrison argued the cause and filed the briefs for appellant.

Kenneth D. Bourne argued the cause and filed the brief for respondent Cedar Side Inn, Inc.

Janet M. Schroer argued the cause for respondents Garold J. Settje and Shirley E. Settje. With her on the brief were Marjorie A. Speirs and Hoffman, Hart & Wagner.

LANDAU, J.

Deits, C. J., dissenting.

Edmonds, J., dissenting.

## LANDAU, J.

Plaintiff appeals a judgment entered after the trial court granted defendants' motions for summary judgment on plaintiff's claim for damages. We review to determine whether there is a genuine issue of material fact and whether, viewing the evidence and all reasonable inferences in the light most favorable to plaintiff, the nonmoving party, defendants are entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We reverse.

Viewed in the light most favorable to plaintiff, the facts are as follows: On August 29, 1993, at about 11:00 a.m., Josh Elliott went to plaintiff's house in Vernonia. He had approximately six dollars in his pocket. Plaintiff, age 30, and Elliott, age 21, each drank two or three beers from a 12-pack provided by plaintiff while they discussed their plans for the rest of the day. They left plaintiff's house in Elliott's pickup truck, carrying the remaining beers from the 12-pack. Plaintiff had $100 with him when they left.

That afternoon, plaintiff and Elliott drank approximately a case of beer with Angie Peterson and Rochelle Ray on a logging road outside of Vernonia. Both men felt intoxicated by that point, and neither remembers clearly the events that followed.

Sometime later, plaintiff and Elliott went to a billiard hall in Banks, where they drank a pitcher of beer and played pool. Afterwards, Elliott borrowed his father's car for the evening. Around 4 p.m., plaintiff and Elliott drove the borrowed car to the Crabtree Bar in Vernonia. Crabtree bartender Debbie Makepeace refused to serve them alcohol because they were visibly intoxicated. Instead, she served them food without charge. Plaintiff and Elliott then left the Crabtree Bar and walked across the street to defendant Cedar Side Inn. Plaintiff recalls drinking four single shots of whiskey at the Cedar Side Inn, and there is testimony in the record that Elliott also was served alcohol at the Cedar Side Inn.[1]

---

[1] One of the witnesses who saw plaintiff and Elliott drinking alcohol at the bar was Elliott's father, who had gone in to look for his son when he saw his car parked nearby.

Plaintiff and Elliott eventually left the Cedar Side Inn in Elliott's father's car and drove to defendant Mini-Mart of Vernonia. Although neither plaintiff nor Elliott recalls going to the Mini-Mart, several witnesses saw them there, and two witnesses saw them leave the Mini-Mart with a 12-pack of beer.[2]

Elliott drove away from the Mini-Mart in his father's car, with plaintiff as a passenger. The car veered off Highway 47 about ten minutes later, at 9:30 p.m., struck a power pole and flipped over. Plaintiff and Elliott were injured seriously. The police officers who investigated the crash scene saw a 12-pack of beer lying a few feet from the car. Only one bottle of beer was left in the carton, and it was cool to the touch. Although he has no independent memory of who purchased the alcoholic drinks that day, plaintiff testified that he was "the one that had the money, so if the beer would have got purchased, it would have been from me." Plaintiff also responded affirmatively to the question whether he was paying for everything during his time with Elliott on August 29. Plaintiff testified that he did so because "I was just making a kind gesture. * * * Just trying to entertain him." When Elliott left the hospital after the accident, he had six dollars, the same amount he had on August 29.

Plaintiff filed a complaint against defendants Garold L. and Shirley E. Settje, doing business as Mini-Mart of Vernonia, and defendant Cedar Side Inn, Inc., alleging a claim for damages pursuant to ORS 30.950 (1993)[3] and common-law negligence. The complaint alleges that defendants served

---

[2] The store clerks testified that they did not sell alcohol to plaintiff or Elliott. They claim that they sold them an "industrial-sized" can of nacho cheese. However, the officers at the crash scene did not report seeing a can of nacho cheese.

[3] ORS 30.950 (1993) provided:

"No licensee, permittee or social host is liable for damages incurred or caused by intoxicated patrons or guests off the licensee, permittee or social host's premises unless:

"(1) The licensee, permittee or social host has served or provided the patron alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(2) The plaintiff proves by clear and convincing evidence that the patron or guest was served alcoholic beverages while visibly intoxicated."

ORS 30.950 was amended by the Oregon Legislature in 1997. Or Laws 1997, ch 841, § 1. The amendments apply only to claims arising after its effective date and, thus, do not apply to this case. Or Laws 1997, ch 841, §§ 2, 9.

alcohol to Elliott while Elliott was visibly intoxicated and that they therefore are liable for the damages plaintiff suffered in the car accident, because plaintiff's injuries were the foreseeable result of defendants serving or selling alcohol to Elliott when he was visibly intoxicated. Defendants moved for summary judgment on each of plaintiff's claims, arguing that, because plaintiff participated with Elliott in becoming intoxicated, he could not recover as a matter of law. The trial court granted the motions on that ground.

■ On appeal, plaintiff contends that the trial court erred in granting defendants' motions for summary judgment. According to plaintiff, there is no authority for the proposition that an injured person may not recover for his or her injuries merely because he or she was intoxicated at the time. Defendants contend that the issue is squarely controlled by *Smith v. Harms*, 125 Or App 494, 865 P2d 486 (1993), *rev dismissed as improvidently allowed* 320 Or 268 (1994).

We recently examined the law concerning recovery for injuries to an intoxicated person in *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 152 Or App 334, 954 P2d 201 (1998). In that case, the plaintiff complained that he suffered injuries as a direct result of the defendant restaurant's decision to continue serving him alcoholic beverages when he was visibly intoxicated. We held that the plaintiff could not recover. In so holding, we explained that, although there once existed a common-law right to recover against persons who furnish alcohol for injuries that result, in 1979 the legislature enacted ORS 30.950, which the courts consistently have construed " 'to confine the judicially created liability of alcohol servers to *third parties*.' " *Fulmer*, 152 Or App at 342 (quoting *Plattner v. VIP's Industries, Inc.*, 95 Or App 351, 354, 768 P2d 440, *rev den* 308 Or 79 (1989) (emphasis in original)). Because the plaintiff was not a third party—that is, one who was injured as a result of the restaurant serving another person who was visibly intoxicated—he could not recover. *Id.*

Whether an intoxicated person who is injured as a result of the actions of another intoxicated person is barred from recovering against the alcohol provider has never been

determined by the courts of this state. Two decisions, however, involve facts sufficiently close to that precise question to be instructive.

The first is *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980). Although decided on the basis of the law as it existed before the legislature enacted ORS 30.950, the case nevertheless bears close examination. The plaintiff was injured while riding on a motorcycle that was operated by Kolibaba. Defendants had served alcohol to both the plaintiff and Kolibaba, who were minors and intoxicated at the time. The plaintiff sued the defendants for negligently serving her and Kolibaba. The trial court struck the negligence claims. The Supreme Court held that the plaintiff had stated a claim against the defendants for injuries arising out of their provision of alcohol to Kolibaba. *Id.* at 274-75. The defendants insisted that the plaintiff should not be allowed to recover, because she had participated in the drinking and was not an "innocent party," but the court declined to address that question in light of the fact that the complaint had not alleged that the plaintiff and Kolibaba "were partying together." *Id.* at 276.

The court held, however, that the plaintiff had failed to state a claim against the defendants based on her own purchase of alcohol from defendants. *Id.* at 279. In that regard, the court explained that ORS 471.130(1) expressly prohibited minors from purchasing alcoholic beverages and that, because of that legislation, it would be "inappropriate to create a common law cause of action for physical injuries to minors caused by their illegal purchase of alcoholic liquor." *Id.* at 279.

The second pertinent decision is *Smith*. In that case, the plaintiff was one of two minors who had purchased alcohol unlawfully. He shared the alcohol with his friends, became intoxicated and was injured in an automobile accident as a result. He sued the store that sold him the alcohol, but the trial court entered summary judgment dismissing the claims. We affirmed. After examining the Supreme Court's decision in some detail, we explained our holding as follows:

> "The Supreme Court's holding in *Miller* denies a cause of action to one who illegally purchases alcohol and sustains

injuries because of that purchase. That rule applies to plaintiff here."

*Smith*, 125 Or App at 499. In *dictum*, we noted that the plaintiff asked us to adopt a rule that his complicity in purchasing the alcohol was simply a matter for the jury to consider in its assessment of comparative fault. We declined, commenting that the plaintiff—who had purchased alcohol and was injured as a result—was not an "innocent party" and was not therefore entitled to recover for his injuries as a matter of law. *Id.*

In short, in *Miller*, the Supreme Court held that an action may be maintained against a provider of alcohol by an intoxicated person so long as he or she claims damages for injuries resulting from the provision of alcohol to another person. Even though the court did not rely on the legislature's then-recent enactment of ORS 30.950, its decision is perfectly consistent with that statute and cases such as *Fulmer* that since have construed and applied it. In *Smith*, we held that an action may not be maintained against a provider of alcohol by an intoxicated person if he or she claims damages for injuries resulting from his or her own purchase of alcohol.

In this case, plaintiff's theory of the case is that defendants are liable because they served Elliott alcohol when he was visibly intoxicated, and plaintiff was injured as a result. Thus framed, plaintiff clearly is a third party who is entitled to maintain his action against defendants for their negligence in serving a visibly intoxicated patron other than plaintiff himself. In fact, plaintiff's claim in this case closely parallels the allegations of the plaintiff in *Miller*, which the court held stated a claim for relief. In contrast, it is plainly distinguishable from the facts of *Smith*, in which the plaintiff alleged a right to recover based on his own purchase of alcoholic beverages from the defendant.

Defendants and Judge Deits insist that our reference to the fact that the plaintiff in *Smith* was not an "innocent" third party requires us to arrive at the same result that we reached in that case. However, they read too much into the use of a single word that appears in *dictum* in one of our opinions, which, in turn, relied on *dictum* in a Supreme Court

opinion that was decided before the controlling statutes were enacted. Moreover, our reference to the plaintiff in *Smith* as "other than an innocent party" was explicitly couched in the context of a statute that makes it illegal for minors to purchase alcoholic beverages. In this case, although plaintiff was intoxicated at the time of the accident, he was not a minor and violated no law in becoming intoxicated.

Defendants and Judge Deits contend that, even if *Smith* cannot fairly be read as broadly as they suggest, it nevertheless should be read that broadly as a matter of "logical extension" or good policy. They argue that, because plaintiff and Elliott "partied together," plaintiff should be barred from recovering against them as a matter of law. Precisely why lawfully "partying together" should preclude recovery for injuries suffered as a result of another person's intoxication, however, defendants and Judge Deits do not make clear. They repeatedly assert that, "partying together" amounts to "participation in" the other person's intoxication, but they never explain what "participation in" the other person's intoxication means. The argument, in other words, reduces to a mere tautology.

Moreover, in addressing defendants' and Judge Deits's proposed rule of law, we do not write on a clean slate. As we have noted, since *Miller* the legislature enacted ORS 30.950, which acted to circumscribe the judicially created rule of liability of alcohol servers. That statute has been construed to limit liability of alcohol servers to third persons. Nothing in the statute, its history or the cases construing it suggests that the legislature intended ORS 30.950 to limit liability even further than that, to include only servers to "innocent" third persons. We conclude that plaintiff is not precluded from maintaining his claim against defendants as a matter of law.

■■ Defendants respond that, even if *Smith* does not bar plaintiff's claim, plaintiff is nonetheless barred from recovery, because the facts demonstrate that plaintiff is a social host under ORS 30.950 and that he was "in violation" of that statute. It is uncontradicted that plaintiff paid for all of the alcohol consumed by Elliott on August 29. A social host is "one who receives guests, whether friends or associates, in a

social or commercial setting, in which the host serves or directs the serving of alcohol to guests." *Solberg v. Johnson*, 306 Or 484, 490, 760 P2d 867 (1988). The Supreme Court has held that a person can even "ante up per drink at a tavern and still be a [social] host." *Id.* We have no difficulty holding that plaintiff is a social host under ORS 30.950. However, that holding does not compel the conclusion that plaintiff is barred as a matter of law from maintaining this action.

■      As noted above, ORS 30.950 is neither a penal nor a prohibitive law. *Cf. Miller*, 288 Or at 279 (inconsistent with apparent legislative policy to reward the violator with a cause of action based on conduct that the legislature has chosen to prohibit or penalize). ORS 30.950 codified the Supreme Court's holding in *Campbell v. Carpenter*, 279 Or 237, 566 P2d 893 (1979), which was the first case in Oregon to recognize that a third party may pursue a cause of action against a tavern owner for serving alcohol to a visibly intoxicated person who thereafter is involved in a traffic accident that results in injury or death to a third party. ORS 30.950 limits liability; it does not create liability. *Sager v. McClenden*, 296 Or 33, 39, 672 P2d 697 (1983). The statute is designed to protect a licensee, permittee or social host from liability for damages incurred or caused by an intoxicated patron off the premises of the licensee, permittee or social host unless the licensee, permittee or social host served the patron while the patron was visibly intoxicated. The statute delineates the type of conduct—serving alcohol to visibly intoxicated patrons or guests—that will expose licensees, permittees and social hosts to liability. A "violation" of ORS 30.950 does not subject licensees, permittees or social hosts to criminal or regulatory sanctions. Rather, it subjects them to liability for damages incurred or caused by the intoxicated patron or guest whom they served. Consequently, plaintiff is not barred as a matter of law from pursuing his claims for relief against defendants on the ground that he violated ORS 30.950 as a social host by providing alcohol to the visibly intoxicated Elliott. The trier of fact must assess the relative fault of the parties in causing plaintiff's damages.

Judge Edmonds echoes defendants' reliance on plaintiff's status as a social host, but finds different significance in it. According to Judge Edmonds, it is not the fact

that plaintiff, as a social host, violated ORS 30.950 that precludes him from recovering in this case. It is the fact that plaintiff was a social host that itself precludes such recovery. Judge Edmonds reasons that ORS 30.950 was intended to limit recovery to injured third parties, and "[a]s a social host, plaintiff cannot be a 'third party' under the statute because he was an alcohol provider and a co-tortfeasor." 154 Or App at 641. Judge Edmonds cites no authority for that proposition. He simply declares that our decision to the contrary "is the antithesis of the very purpose that the legislature had in mind when it enacted ORS 30.950." *Id.*

The purpose of the statute, as the Supreme Court and we have stated many times, was to limit the *liability* of social hosts and other servers of alcohol, *see Fulmer*, 152 Or App at 339-43 (citing cases), not to limit the extent to which a server can bring claims for negligence. It is thus Judge Edmonds's dissent that would turn the statute on its proverbial head.

Moreover, Judge Edmonds's dissent rests on a false premise that a single individual cannot be both a plaintiff and a defendant—or more precisely in this context, a server and a third party—in the same case. Such an occurrence is routine in multi-party litigation: A single individual may be a plaintiff as to some parties and a defendant as to others within the same case. ORCP 22 C. Similarly, in an alcohol liability case, merely because plaintiff could have been sued by Elliott does not mean that plaintiff cannot sue defendants.[4] As to Elliott, plaintiff may be a social host. As to defendants, however, plaintiff is a party injured as a result of defendants' conduct in serving Elliott while visibly intoxicated. As we have stated, that is precisely the sort of action permitted under ORS 30.950.

■ In plaintiff's third assignment of error, he contends that the trial court erred in holding that, as a matter of law, the evidence in the record is sufficient to establish that neither of the defendants provided alcoholic beverages to Elliott

---

[4] In *Solberg*, for example, the Supreme Court held that the defendant, a tavern that had been sued for serving a visibly intoxicated patron, could cross-claim against the "social host" who bought the drinks. 306 Or at 490. Thus, in that case, the server was both defendant and plaintiff in the same case.

while Elliott was visibly intoxicated. Defendants respond that the trial court ruled only that the case was controlled by *Smith* and that the trial court did not rule on the questions of whether defendants served Elliott while he was visibly intoxicated or whether any alcohol obtained by Elliott at either establishment caused plaintiff's injuries. Nonetheless, defendant Cedar Side Inn defends the trial court's grant of summary judgment on the ground that there is no evidence that it provided Elliott with alcohol while he was visibly intoxicated. Defendant Mini-Mart also defends the trial court's grant of summary judgment on the ground that plaintiff has not established that alcohol purchased at the Mini-Mart was causally related to the accident. If defendants were correct that the record is devoid of such evidence, we would affirm the trial court's grant of summary judgment. However, we agree with plaintiff that, based on the record before us, there are genuine issues of material fact that preclude summary judgment.

As explained at the outset, plaintiff and Elliott spent the day of August 29 drinking together. Both Angie Peterson and Rochelle Ray, the women with whom plaintiff and Elliott drank approximately a case of beer, stated that plaintiff and Elliott appeared intoxicated before they entered the Cedar Side Inn. Crabtree bartender Debbie Makepeace, who observed both men before they entered the Cedar Side Inn, attested in her affidavit to her recollection that they were visibly intoxicated when they left the Crabtree Bar to walk across the street to the Cedar Side Inn. Plaintiff recalls drinking four shots of whiskey at the Cedar Side Inn, and Elliott's father, who had gone into the bar looking for his son, testified that he saw Elliott drinking alcohol there. That evidence creates a genuine issue of material fact about whether defendant Cedar Side Inn provided alcoholic beverages to Elliott while he was visibly intoxicated.

Similarly, there is evidence in the record that raises genuine issues of fact about whether Elliott was sold beer at the Mini-Mart of Vernonia while visibly intoxicated and about causation. Although the store clerks testified that they did not sell alcohol to either plaintiff or Elliott, witnesses saw the men leave the Mini-Mart with a 12-pack of beer. The

police officers who investigated the crash scene saw a 12-pack of beer lying a few feet from the car, with only one bottle of beer left in the carton. That bottle was cool to the touch. It is for the trier of fact to resolve the conflicts in the evidence about whether Elliott was provided alcohol at the Cedar Side Inn or at the Mini-Mart while visibly intoxicated. *See Hamilton Properties, Inc. v. Associated Grocers*, 144 Or App 171, 178, 925 P2d 1237 (1996) (conflicting factual evidence precludes summary judgment). Plaintiff, the nonmoving party, is not required to prove the elements of his claim at the summary judgment stage; he is required only to raise a genuine issue as to any material fact. ORCP 47 C; *Jones*, 325 Or at 419. On this record, we conclude that plaintiff has raised genuine issues of material fact.

For the foregoing reasons, we conclude that the trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.

**DEITS, C. J.,** dissenting.

In our recent decision in *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 152 Or App 334, 339-43, 954 P2d 201 (1998), we discussed the relevant case law and reiterated what it consistently holds—that a person can have no statutory or common-law right of action against a provider of alcohol for injuries that result from the person's own alcohol consumption and intoxication. Rather, only an "innocent third party" who suffers resulting injuries, *e.g.*, a pedestrian whom the intoxicated person runs over, is entitled to recover from the provider. *Smith v. Harms*, 125 Or App 494, 499, 865 P2d 486 (1993), *rev dismissed* 320 Or 268, 880 P2d 934 (1994). Defendants argue that plaintiff's claim is barred under those principles. I agree with them and, therefore, dissent from the majority's contrary holding.

Summarily stated, plaintiff and Elliott participated in a joint drinking binge. Plaintiff provided or purchased all of the alcohol that they consumed. As a direct result, both were injured in an automobile accident. The majority holds that, because Elliott was the driver and plaintiff the passenger in the vehicle, plaintiff is a "third party" and his action is

not barred under the principles described above. In my view, plaintiff comes squarely within those principles, and the fortuity of which of the two participants in the drinking spree was the driver and which was the passenger does not remove plaintiff from their application.

The majority and I agree, in general terms, that the distinction drawn in both the Supreme Court's decisions and ours is between persons injured as a result of their own alcohol involvement or intoxication, and "third parties" who are injured as a consequence of the alcohol use or intoxication of others. Our disagreement is over how sharp a line has been drawn between the two and where the line is located.

The majority concludes, after discussing *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), and *Smith*:

> "In short, in *Miller*, the Supreme Court held that an action may be maintained against a provider of alcohol by an intoxicated person so long as he or she claims damages for injuries resulting from the provision of alcohol to another person. * * * In contrast, in *Smith*, we held that an action may not be maintained against a provider of alcohol by an intoxicated person if he or she claims damages for injuries resulting from his or her own purchase of alcohol.

> "In this case, plaintiff's theory of the case is that defendants are liable because they served Elliott alcohol when he was visibly intoxicated, and plaintiff was injured as a result. Thus framed, plaintiff clearly is a third party who is entitled to maintain his action against defendants for their negligence in serving a visibly intoxicated patron other than plaintiff himself. In fact, plaintiff's claim in this case closely parallels the allegations of the plaintiff in *Miller*, which the court held stated a claim for relief. In contrast, it is plainly distinguishable from the facts of *Smith*, in which the plaintiff alleged a right to recover based on his own purchase of alcoholic beverages from the defendant." 154 Or App at 628.

I read *Miller* differently from the way that the majority does. There were two kinds of claims and, correspondingly, two different issues in that case:[1] First, whether

---

[1] The claims against the providers in *Miller* were asserted in a third-party contribution action, rather than by Miller (the injured passenger) herself. However, the third-party plaintiff's right to proceed on those claims was co-extensive with

Miller could proceed against the providers on the basis of their sales to Miller herself, and second, whether she had a right of action against them arising out of their sales of alcohol to Kolibaba, who was the driver of the motorcycle on which Miller was later injured. It was in connection with Miller's claims for the direct sales to her that the court concluded that her own complicity in the illegal purchases, *inter alia*, barred her from proceeding. However, the court held that, at least at the pleading stage, Miller's claims against the providers based on their service and sales to Kolibaba were viable. In so holding with respect to the *latter* claims, the court noted but left open the question that this case presents. It said:

> "Defendants contend that plaintiff should not be allowed to recover because she participated with Kolibaba in his drinking and inebriation, and she is therefore not in the position of an innocent third party. The court is not in a position to address this question because the issue is not raised by the pleadings. The complaint alleges only that they were both patrons of the tavern and that after both had been drinking beer, Kolibaba gave Miller a ride on his motorcycle. There are no allegations from which it must necessarily be concluded that they were partying together." *Miller*, 288 Or at 275-76.

I do not agree with the majority that the situation here "closely parallels the allegations of the plaintiff in *Miller*, which the court held stated a claim for relief." Rather, in my view, this case presents the question that the court expressly left open in *Miller*: Whether a plaintiff who *has* "partied with" and become intoxicated in the company of another person stands in "the position of an innocent third party" who may bring an action against the alcohol provider for injuries sustained as a result of his or her drinking companion's intoxicated driving.

I also disagree with the majority that there is anything tautological about defendants' argument that the answer to that question should be no. 154 Or App at 629.[2]

the right of action that Miller would have had in a direct action against the sellers. For ease of reference, I will refer to the claims in the remainder of this opinion as Miller's.

[2] I do agree with the majority, however, that *Smith* does not resolve the question and that defendants find more assistance in that case than I think it gives them.

The point of defendant's arguments, as I read them, is that a putative "third party" who "participates in" the drinking activities of the person whose intoxication later leads to the party's injury is not in a materially different position, *vis-a-vis* the provider of the alcohol, from one who is injured as a result of his own intoxication.

It is true that terms such as "party with" and "participated in" are fuzzy, in that they could refer to incidental forms of mutual imbibance, as well as extensive and extended shared consumption. I am not suggesting, however, that the same rule must apply under facts of the kind in this case and facts at the other end of the spectrum, *e.g.*, where two people have one drink together, go their separate ways and one of them later becomes drunk and, by complete coincidence, is involved in an accident that injures the other. By contrast, there was nothing random or ambiguous about plaintiff's connection with Elliott's drinking here. They drank and drove together for a period of more than ten hours. The only difference between plaintiff—who the majority holds may bring this action, and Elliott—who clearly could not—is that one of the two incoherently drunk men made his way to the driver's side of the vehicle and the other found himself on the passenger's side.

The majority describes the question in this case as being "[w]hether an intoxicated person who is injured as a result of the actions of another intoxicated person is barred from recovering against the alcohol provider[.]" 154 Or App at 626. However, I do not think that the question can correctly be parsed into those parts. The alcohol consumption and the resulting intoxication of both participants were the "actions" of both. The drinking binge that culminated in the accident was a joint activity. In sum, plaintiff's injury was as much the result of his own alcohol consumption as that of Elliott, for purposes of the principle barring actions against the purveyor that has been repeatedly stated in the case law and is embodied in ORS 30.950. Correspondingly, plaintiff is not a "third party" within the meaning of those cases. He is part of a first person plural.

For the foregoing reasons, I would affirm the trial court's judgment, and I respectfully dissent.

Linder, J., joins in this dissent.

**EDMONDS, J.,** dissenting.

I dissent because I believe that the trial court was correct when it ruled that defendants were entitled to summary judgment. The issue is whether plaintiff is a party who can bring an action against Cedar when plaintiff concedes that he purchased the alcoholic beverages from defendants for Elliott when Elliott was visibly intoxicated. Under ORS 30.950, the liability of alcohol providers and servers is limited to "third parties," who have been injured as a result of the providing of alcoholic beverages to visibly intoxicated persons. *Sager v. McClenden*, 296 Or 33, 37, 672 P2d 697 (1983). The legislature did not intend that alcohol providers, *i.e.*, tortfeasors, could be plaintiffs under the statute.

ORS 30.950 (1993) provides:

"No licensee, permittee or *social host* is liable for damages incurred or caused by intoxicated patrons or guests off the licensee, permittee or social host's premises unless:

"(1)   The licensee, permittee or social host has served or provided the patron alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(2)   The plaintiff proves by clear and convicting evidence that the patron or guest was served alcoholic beverages while visibly intoxicated." (Emphasis supplied.)

"At common law, anyone who served alcohol ordinarily was not liable for injuries resulting from the drinker's intoxication." *Hawkins v. Conklin*, 307 Or 262, 266, 768 P2d 66 (1988).[1] An exception developed in the common law to the general rule regarding cases in which the provider had reason to know that the recipient's consumption of the alcohol would create an unreasonable risk to others of injury. *See Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 643, 485 P2d 18 (1971).[2] In 1977, the Oregon Supreme Court applied the

---

[1] In 1913, the Oregon legislature enacted the Dram Shop Act, which provided that spouses, parents, or children could maintain a claim against a person who sold an intoxicated person alcoholic beverages. *Former* ORS 30.730 (repealed by Oregon Laws 1979, chapter 801, section 4).

[2] In *Wiener*, the court held that a fraternity house that served alcohol to a minor, knowing that the minor would be driving thereafter, could be liable in

exception to the common-law rule that alcohol providers could not be held liable for injuries resulting from the recipient's intoxication to a different fact situation. It held that a wrongful death action founded in negligence could be brought against a tavern for serving a visibly intoxicated person, who subsequently caused the death of the decedent in a motor vehicle accident. *Campbell v. Carpenter*, 279 Or 237, 243-44, 566 P2d 893 (1977). The court reasoned that the tavern owner, serving a visibly intoxicated patron, could reasonably have foreseen that the patron would drive from the tavern and injure others off the tavern premises. *Id.*

In reaction to that decision, the legislature enacted ORS 30.950, which at the time provided that:

"SECTION 1. No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated.

"SECTION 2. No private host is liable for damages incurred or caused by an intoxicated social guest unless the private host has served or provided alcoholic beverages to a social guest when such guest was visibly intoxicated." Or Laws 1979, ch 801.

Since the statute was enacted, the Supreme Court has interpreted it and the subsequent changes to it on several occasions. When the Supreme Court interprets a statute, that interpretation becomes part of the statute as if written into it at the time of its enactment. *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991). In *Sager*, the court explained that "[t]he legislative history of ORS 30.950 indicates that [the statute's] purpose was to limit the liability of liquor licensees and permittees to *third parties*." 296 Or at 37. (Emphasis supplied.) The court held that "ORS 30.950 does not create a claim in favor of intoxicated patrons injured off premises against liquor licensees who serve them when visibly intoxicated." *Id.* at 40. In *Hawkins,* the court explained

---

negligence. 258 Or at 643. It also held that in the absence of a showing that the provider of the beverages to the fraternity had control over their dispensation by the fraternity, the provider could not be held liable. *Id.* at 640.

that the legislative debate focused on restricting expansion of the common-law liability of alcohol providers when an intoxicated patron injured a third party off of the provider's premises. "The sponsors sought to 'roll back' the law to the state of the common law at or before the *Campbell* decision." *Hawkins*, 307 Or at 267. Ultimately, the legislature decided to codify the holding of *Campbell* in ORS 30.950 and otherwise restrict the bringing of actions against alcohol providers. In *Hawkins*, the court reiterated:

> "Thus, to state a common law negligence claim that is not barred by ORS 30.950, the plaintiff must allege that the licensee or permittee served alcohol to the person who injured the plaintiff when that person was visibly intoxicated. Otherwise, ORS 30.950 bars the claim." 307 Or at 268.

In *Gattman v. Favro*, 306 Or 11, 757 P2d 402 (1988), the issue was whether ORS 30.950 provided a remedy to the plaintiff. In that case, the plaintiff brought an action against a tavern owner and others for damages because of injuries suffered in an off-premises knife attack by an intoxicated patron of the tavern. The court held that no statutory action under ORS 30.950 could be maintained by the plaintiff. The court explained:

> "Members of the 1979 legislature would be surprised to hear that in attempting to limit the liability of servers of alcoholic beverages to the standard stated in *Campbell*, they instead created licensee and permittee liability for all actions of an intoxicated customer upon satisfaction of the standard first stated in *Campbell, i.e.*, serving a visibly intoxicated person. Throughout the committee hearings, members assumed that the issue was the extent of licensee and permittee liability for injuries caused by intoxicated motorists under then existing caselaw and how such caselaw should be modified; at no time did anyone cite a fact pattern or example involving liability outside the context of automobile or traffic related injuries." *Id.* at 22.

The court concluded, "[t]his plaintiff is not within the class of person intended to be protected by the statute and the harm is not of a type intended to be protected against." *Id.* at 24.

In summary, ORS 30.950 governs plaintiff's action because he seeks to hold defendants liable for his injuries for

providing alcoholic beverages to Elliott, who was visibly intoxicated at the time. The statute as interpreted by the Supreme Court acts as a limitation on common-law claims against alcohol providers and bars those claims unless the circumstances alleged fall within the exception created by the legislature. Because of the statute's limiting effects on common-law actions against alcohol providers, only "third parties" as that term was contemplated by the legislature, can maintain an action against alcohol providers for serving alcoholic beverages. The issue squarely presented by the appeal in this case is whether plaintiff is such a "third party" under ORS 30.950.

The answer to that inquiry is found in the reasoning of the Supreme Court decisions interpreting the statute. In *Sager,* the court held that an intoxicated patron was not a "third party" for purposes of ORS 30.950, because the language of the statute "logically limits relief rather than expands it." 296 Or at 39. The court noted, "[a] thorough reading of the minutes of the committee hearings on HB 3152 fails to reveal a single mention of creating a claim in favor of injured patrons." *Id.* In *Solberg v. Johnson,* 306 Or 484, 760 P2d 867 (1988), a tavern owner, who had settled claims against him by a third person injured in an automobile accident by an intoxicated patron of the tavern, brought a third-party action for contribution against the patron's stepfather. The owner alleged that the stepfather had purchased alcoholic beverages for his visibly intoxicated stepson at the tavern. *Id.* at 487-88. Following its holding in *Wiener,* the court focused on who had the direct control over determining who drank and how much. *Solberg,* 306 Or at 491-92. Because the tavern alleged that the stepfather had bought alcoholic beverages for the stepson when the stepson was visibly intoxicated, the court held that the stepfather was a "social host" within the meaning of *former* ORS 30.955[3] and permitted the tavern owner to bring the stepfather into the action as a third-party defendant.

---

[3] ORS 30.955 was enacted in 1979 as part of Oregon Laws, chapter 801, in response to *Campbell. See* Or Laws 1979, ch 801, § 2. It was repealed in 1987 and the liability of "social hosts" originally covered by ORS 30.955 was made part of ORS 30.950. Or Laws 1987, ch 774, §§ 13-14.

The holdings in *Sager* and *Solberg* provide the test that plaintiff's claim must pass in order to survive the limiting effect of the statute: whether classifying plaintiff as a third party will exceed the court's holding under *Campbell* and the legislature's desire to limit common-law liability to those circumstances only or whether plaintiff alleges a claim permitted by the statute. The statute contemplates three classes of parties: (1) alcohol providers, including social hosts, as tortfeasors; (2) visibly intoxicated patrons who act negligently off the premises of the alcohol provider; and (3) injured third parties. It is clear under *Sager* that an "injured patron" cannot also be an "injured third party." It is also clear from *Solberg* that a person who purchases alcohol for a visibly intoxicated person at a tavern is a social host and an alcohol provider under the statute. In light of those holdings, it necessarily follows that a "third party" within the scheme of a statute that limits rather than creates or expands liability must be one who is not an intoxicated patron or an alcohol provider.[4] Here, it is uncontroverted that plaintiff purchased all of Elliott's alcoholic beverage. As a social host, plaintiff cannot be a "third party" under the statute because he was an alcohol provider and a cotortfeasor.

The majority opinion is devoid of any declaration about legislative intent in support of its position. It declares:

> "In this case, plaintiff's theory of the case is that defendants are liable because they served Elliott alcohol when he was visibly intoxicated, and plaintiff was injured as a result. Thus framed, plaintiff clearly is a third party who is entitled to maintain his action against defendants for their negligence in serving a visibly intoxicated patron other than plaintiff himself." 154 Or App at 628.

The majority's assertion does not coincide with the legislature's intent. The issue is one of statutory interpretation. Our obligation is to ascertain the legislature's intention and to apply it to the facts of this case. We exceed our authority if we

---

[4] Moreover, a "third party" by definition is someone who is not directly involved in the matter or affair. *See Black's Dictionary,* 1278 (4th ed 1968) (defining party and third parties). The gravamen of the statute is to limit liability to those who provide alcohol to a visibly intoxicated person. Thus, an alcohol provider cannot be a "third party" as distinguished from a tortfeasor because the provider is directly responsible for the commission of the tort.

impose our own policy decisions about what we think the law should be. As the procurer and provider of alcoholic beverages for consumption by Elliott, a visibly intoxicated person, plaintiff is the kind of *defendant* that the legislature had in mind when they enacted the statute. The fortuity that plaintiff was a passenger rather than a driver when he was injured does not relieve him of being a provider under the statute.

The majority reasons that the facts of this case simply present another species of comparative negligence for a jury to decide.[5] However, the majority's holding is the antithesis of the very purpose that the legislature had in mind when it enacted ORS 30.950. The majority expands ORS 30.950 to permit a tortfeasor to become a "third party" rather than limiting the liability of alcohol providers to injured third parties. Moreover, had the legislature intended for the doctrine of comparative negligence *to apply to tortfeasors to* permit recovery by them, it would have not have promulgated ORS 30.950 at all or at least qualified its limitation in some manner. After all, ORS 30.950 was enacted to restrict common-law actions against alcohol providers after the enactment of the comparative negligence statute, ORS 18.470, in 1971,[6] and presumably, the legislature was well aware of the provisions of ORS 18.470 when it enacted ORS 30.950.

Because the majority's reasoning fails to engage with the intent of the legislature and frustrates the purpose of the statute, I dissent.

Linder, J., joins in this dissent.

---

[5] "Oregon has never recognized a common law action against an alcohol provider in favor of a person who suffers injury from his or her own intoxication." *Plattner v. VIP's Industries, Inc.*, 95 Or App 351, 353, 768 P2d 440, *rev den* 308 Or 79 (1989). In *Plattner*, we rejected the argument that the plaintiff's decedent, an intoxicated patron, was entitled to bring a wrongful death claim for common-law negligence against an alcohol provider in light of the current law of comparative negligence. We said, "[t]he legislative history of ORS 30.950 indicates that its purpose is to confine the judicially created liability of alcohol servers to *third parties*." 95 Or App at 354 (emphasis in original).

[6] The Oregon Legislature first enacted the comparative negligence statute in 1971. *See* Or Laws 1971, ch 668, § 1. In 1975, the legislature made significant changes to the statute to further define the doctrine of comparative negligence. Or Laws 1975, ch 599, §§ 1-6. ORS 30.950 was first enacted in 1979. Or Laws 1979, ch 801, § 1.