Argued and submitted February 22, affirmed April 17, reconsideration denied June 12, petition for review denied August 20, 1991 (312 Or 80)

Stanley FABER
and Ilene Faber,
dba Arbor Lane Nursery,
*Respondents,*

*v.*

ASPLUNDH TREE EXPERT CO.,
*Appellant.*

(16-88-10307; CA A63604)

810 P2d 384

William E. Flinn, Eugene, argued the cause for appellant. With him on the briefs were John R. Osburn and William E. Flinn Associates, Eugene.

George W. Kelly, Eugene, argued the cause for respondents. With him on the brief was C. Peter Sorenson, Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs operate a tree nursery. Defendant is in the business of applying herbicides along railroad rights-of-way under contracts with railroad companies. On two occasions in 1987 and on two occasions in 1988, defendant applied herbicides to a right-of-way immediately adjacent to plaintiffs' facility, and extensive damage to plaintiffs' tree crops allegedly resulted. Plaintiffs brought this action, alleging claims, *inter alia,* for intentional trespass, unintentional trespass and negligence. They sought compensatory and punitive damages. Although the punitive damages claim was submitted to the jury over defendant's objection, the jury awarded only compensatory damages. Defendant appeals from the resulting judgment, and we affirm.[1]

Defendant first assigns as error that the court permitted plaintiffs to present evidence of defendant's financial worth as part of their case for punitive damages. Defendant argues that the evidence could have affected the jury's finding on liability and compensatory damages. ORS 41.315 provides:

"(1)   Except as otherwise specifically provided by law, a claim for punitive damages shall be established by clear and convincing evidence.

"(2)   In a civil action in which a party seeks punitive damages from another party, evidence of the financial condition of a party shall not be admissible until the party seeking such damages has presented evidence sufficient to justify to the court a prima facie claim of punitive damages."

Defendant argues that plaintiffs did not present sufficient evidence to allow their claim for punitive damages to go to the jury and that the financial condition evidence was therefore inadmissible. Plaintiffs contend that their evidence was sufficient to make out a *prima facie* case for an award of punitive damages. We agree with plaintiffs.[2]

---

[1] For reasons that are not clear from the record provided on appeal, only the negligence theory was submitted to the jury as a basis for liability, although the trespass claims were not stricken. Neither party argues that that approach, in itself, bears on the disposition of the issues that defendant raises relating to the punitive damages claim.

[2] Defendant moved to withdraw the punitive damages claim from the jury. The trial court denied the motion, but the jury did not award punitive damages.

Because we reject defendant's assignment on the ground that there was evidence that would have permitted an award of punitive damages, we assume, but do not decide, the correctness of defendant's premise that ORS 41.315 makes the adequacy of the evidentiary support for an award of punitive damages the determinant of whether financial condition evidence is admissible.

In *McGregor v. Barton Sand & Gravel, Inc.,* 62 Or App 24, 660 P2d 175 (1983), the plaintiffs brought an action for trespass and related torts arising out of the spillage of water and debris from the defendants' property onto theirs. We held that there was sufficient evidence to support the plaintiffs' claim for punitive damages, and we stated the applicable test:

> "To a large extent, defendants premise their argument on the not seriously disputed fact that they did not intend to dump water and debris on plaintiffs' property. They miss the point. The issue is whether defendants, with knowledge that the conditions on their land were causing damage to plaintiffs, did 'everything reasonably possible to eliminate or minimize the damage,' *McElwain v. Georgia-Pacific,* 245 Or 247, 251-52, 421 P2d 957 (1966), and if they did not, whether their failure constituted a deliberate disregard of plaintiffs' rights.

> "In the statements of facts in their briefs and in the arguments under their assignments of error, defendants focus on the evidence that they responded to the problem, undertook remedial measures and acted responsibly in not taking further measures when the specialists hired by the parties disagreed about what should be done. We agree with defendants that the jury *could* have found that defendants did *not* act with deliberate disregard for plaintiffs' rights; the question before us, however, is whether there was evidence from which the jury could find that defendants *did* act with deliberate disregard. *2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981). There was." 62 Or App at 29-30. (Emphasis in original.)

The evidence supporting punitive damages here meets that test. Between the 1987 and 1988 herbicide applications, plaintiffs filed an herbicide damage report with the Oregon Department of Agriculture (department). A department investigator made an on-site inspection and took samples from the soil, vegetation and structures on plaintiffs' property and in the right-of-way. He stated in his report that the "symptoms noted" on the trees were "similar to" those produced by or "can be caused" by herbicides of the kinds that defendant used. The report also stated that "pH, salts, and moisture can also cause the needle desiccation" but that the analysis of pH and salts in the seedling samplings were in the "normal ranges." Plaintiffs' attorney enclosed a copy of the investigator's report and the department's laboratory report with a letter that he sent to defendant before it applied the

herbicides in 1988. The letter itself also alerted defendant that, in plaintiffs' view, the herbicides were the cause of extensive damage.

The laboratory analysis of the samples showed little herbicide residue in the right-of-way and the residue on plaintiffs' property was small to non-existent. At trial, the investigator testified, in effect, that there were a number of possible causes of the damage and that, on the basis of his observations and the sample analysis, he did not think that the herbicides were the likeliest cause. However, he also testified that some of the herbicides in question could cause damage without leaving a residue detectable by laboratory analysis. In any event, the investigator's testimony at trial does not reflect directly on what defendant knew or thought in 1988, but his 1988 report does.

Plaintiffs also introduced in evidence labels from containers for the kinds of herbicides that defendant applied. The labels contained detailed warnings about the risk of "drift" and resulting damage to nearby vegetation. They also contained explicit directions about application methods that would protect against drift. There was evidence that defendant did not follow those methods in either 1987 or 1988, and there was evidence that the application methods used in both years maximized the threat to plaintiffs' trees. The labels and the other evidence supported plaintiffs' position that defendant knew, at least in 1988, that it was damaging plaintiffs' stock and that it failed to take appropriate precautions in the light of that knowledge.

Defendant argues that, given its own on-site inspections and the department's laboratory results, "neither the defendant nor any other reasonable person would have 'easily' concluded that the plaintiffs' 1987 seedling symptoms were caused by the defendant's herbicides." However, defendant's argument views the evidence most favorably to itself. Because the question that defendant raises is equivalent to whether it was entitled to a directed verdict on the punitive damages claim, the evidence must be viewed in the opposite way. The jury could have inferred that defendant was aware before the 1988 application that its herbicides were the single likeliest cause of plaintiffs' damage and that, nevertheless, it applied the herbicides again in 1988 and did so in a manner that it

knew was not calculated to avoid further damage to plaintiffs. It would follow, the jury could reason, that defendant acted with knowledge that it was causing damage to plaintiffs, did nothing to eliminate or minimize the damage and deliberately disregarded plaintiffs' rights.

Defendant relies on *Hudson v. Peavey Oil Company,* 279 Or 3, 566 P2d 175 (1977), where the court held that a punitive damages claim should not have been submitted to the jury in an action arising out of the leakage of gasoline from the defendant's storage tanks to the plaintiffs' property. However, the evidence in *Hudson* was that the gasoline could have come "from a number of other sources," 279 Or at 9, that the defendant had checked and found no evidence of gasoline loss from its tanks and that the defendant had undertaken curative measures immediately after learning that it was the source of the problem. Here, other possible causes were amorphous and speculative, and a fact finder could reasonably infer that defendant could not have considered any one or all of them to be a likely cause of the damage, instead of defendant's spraying herbicides that it knew could cause the damage in immediate proximity to plaintiffs' nursery. Also, unlike in *Hudson,* defendant took no curative action; instead, it repeated in 1988 the conduct that caused the damage in 1987. *Hudson* does not aid defendant.[3]

■ Defendant also suggests that, because ORS 41.315 requires proof of the facts warranting punitive damages by clear and convincing evidence, plaintiffs' showing did not amount to a *prima facie* case, even if it might have under the preponderance of the evidence standard in the old case law. The clear and convincing evidence standard relates to how a jury weighs the evidence, not to how a trial court assesses the capability of the evidence to establish facts.[4] We conclude that plaintiffs presented a *prima facie* case for an award of punitive

---

[3] Defendant also relies on *Andor v. United Air Lines,* 303 Or 505, 517, 739 P2d 18 (1987), for the proposition that punitive damages may be assessed only for conduct that is "culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." That test does not differ in substance from the one articulated in the more apposite cases that we have cited and discussed.

[4] There may be exceptions to this general proposition. *See Santosky v. Kramer,* 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982). This is not one.

damages. The admission of the financial worth evidence was therefore not error.

■■ Defendant asserts in its second assignment that the court erred by denying its motion for a mistrial after plaintiffs attempted to impeach defendant's expert by referring to his work with Agent Orange. Defendant argues, first, that the improper matter was "intentionally injected" by plaintiffs' attorney.[5] Therefore, defendant contends, a mistrial was mandatory under *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968), rather than being in the court's discretion. However, as we recently held in *Washburn v. Holbrook,* 106 Or App 60, 806 P2d 702 (1991), the mandatory mistrial rule in *Blake* applies only when the subject of insurance is improperly and intentionally introduced. The rule does not apply here. Defendant also argues that the court's cautionary instruction could not dispel the prejudice from the reference to Agent Orange.[6] We disagree. The court did not abuse its discretion by denying a mistrial.

■ Defendant's third assignment is that the court erred by admitting the herbicide container labels into evidence or by allowing the jury to consider them. Defendant maintains that the labels were only conditionally relevant and that no evidence was offered to connect them to the conditional fact. *See* OEC 104(2). Defendant also contends that the evidence was confusing and misleading. The thesis of defendant's arguments is that, although the labels may have been probative of negligence, there was no showing that defendant's failure to follow the labels was a cause of damage. Defendant explains:

> "The trial court's example of the drunk driver is, in fact, an example of *conditionally* relevant evidence. Evidence of the driver's intoxication * * * is received only because the

---

[5] As with the first assignment, we assume, but do not decide, that defendant's underlying suppositions are correct.

[6] The court stated:

"Members of the Jury, I have an instruction for you. It's an instruction that I expect you to follow to the letter and to not question it and to be able to continue this trial with this instruction.

"The instruction is the reference to Agent Orange has been stricken. You are to disregard the reference and there is no substance to any implications of the question asked. The subject and implications of Agent Orange have no relevance nor any bearing on this trial. They shall not be considered or discussed by you at all."

court expects evidence that the intoxication was a cause of the injury. Admittedly, evidence of driving while intoxicated proves negligence. Nevertheless, the evidence is nothing more than conditionally relevant until there is additional evidence to support a finding that the negligence was a cause of the rear-end accident.

"Here, the situation is much the same. The herbicide labels could have been received subject to the condition the plaintiffs later prove that a violation of the labels' directives caused their damage." (Emphasis defendant's.)

That analogy demonstrates the opposite of the proposition that defendant would have us derive. The ultimate relevance of the driver's intoxication in the example does not depend on a showing that the *intoxication* caused injury; it turns on a showing that the *negligence* that the intoxication tends to prove was causal. Similarly, here, the labels support a finding of negligence, and the negligence was shown by other evidence to be the cause of injury. Defendant essentially posits that every underlying fact from which negligence can be inferred, as distinct from the negligence itself, must have a direct causal link with the harm in order for a fact finder to consider it. The argument is self refuting.

■ In its fourth assignment, defendant argues that the court erred by allowing two of plaintiffs' experts to testify that defendant's spraying operations fell below the standard of care for the industry. Defendant contends:

"The opinions given by Messrs. Akesson and Washburn were not 'otherwise admissible' under [OEC 704] because they did not 'assist the trier of fact' as required by [OEC 703]. The abundant evidence of the dynamics of herbicide drift and the precautions to be taken to avoid drift, especially when wind and 'sensitive' conditions exist, sufficiently prepared the jury for the task of deciding whether the defendant's conduct was negligent under the circumstances. The opinions of Messrs. Akesson and Washburn did nothing more than instruct the jury to return a verdict for the plaintiffs.

"* * * * *

"The kind of opinion testimony given by Messrs. Akesson and Washburn may be appropriate in actions where juries must decide whether the conduct of certain professionals, such as physicians and attorneys, fell below the applicable standard of care. However, the present action does not involve

an instance where '...a jury generally is not able to determine what is reasonable professional conduct without such [expert] testimony.' *Childers v. Spindor,* [91 Or App 119, 122, 754 P2d 599 (1988)]." (Quotation corrected; bracket defendant's.)

We disagree. Both witnesses testified that defendant's conduct fell below the standard of care, because the application took place *too close to* plaintiffs' nursery, given the wind and other conditions. The witnesses' specialized knowledge about herbicide application and the appropriate methods to be followed under various conditions could have assisted the jury in understanding the other evidence. *See DeRosa v. Kolb,* 90 Or App 548, 752 P2d 1282, *rev den* 306 Or 101 (1988). The testimony was properly received.

■     Defendant's fifth assignment asserts that there was insufficient evidence of loss of future income and loss of business value to submit to the jury. Defendant stresses that plaintiffs offered no evidence of their pre-1987 earnings or experience or comparable evidence regarding similar businesses. However, they did produce contracts with government agencies, which were similar to ones that they had performed in the past and which they could not perform satisfactorily in 1987 or 1988. They also established that they were not awarded similar contracts in 1989, because of the poor quality of their trees in the two previous years. The contracts contained sufficient data from which the dollar amounts of loss could be derived. That evidence, along with the explanatory testimony and projections of plaintiffs' accountant, was sufficient to prove with "reasonable certainty" the damages that were sought and awarded.

Affirmed.