DeVORE, J.
*581 Plaintiff appeals from a limited judgment that, on a motion for summary judgment, dismissed his liquor liability claim against defendant BCK Corporation, the operator of Duffy's Irish Pub. Plaintiff had alleged that defendant had overserved Mullenix while she was visibly intoxicated and that he was later injured while a passenger in a car that Mullenix drove. Defendant sought summary judgment, asserting that plaintiff had "substantially contributed" to the intoxication of Mullenix, within the meaning of ORS 471.565(2). That statute, which we quote and explore later, imposes a burden on plaintiff to prove that he did not substantially contribute to her intoxication. We conclude that the trial court did not err in granting summary judgment for defendant.
*211 I. FACTS
We view the facts and accept reasonable inferences in the light most favorable to plaintiff, the nonmoving party. Vaughn v. First Transit, Inc. , 346 Or. 128, 132, 206 P.3d 181 (2009). Plaintiff and Mullenix had been acquainted but had not planned to meet on March 29, 2014. That evening about 9:00 p.m., Mullenix and her fiancé, Hidaro, went to Duffy's Irish Pub, because Mullenix knew it had a karaoke machine with a song that she wanted to sing. According to her, they had originally planned to leave after one song. After about 15 minutes, plaintiff arrived, and he joined them. The three bought rounds of drinks for each other, and they stayed until about 2:00 a.m. Mullenix recalls that plaintiff bought at least two rounds for her, possibly more. Hidaro recalls that plaintiff bought between three and five rounds for the group, but some rounds did not include Mullenix. He was "pretty confident" that plaintiff bought Mullenix between one and three beers. Mullenix estimated that she had a 16-ounce beer every 30 minutes or about 10 beers during the five hours at Duffy's that evening. After the "last call," plaintiff asked Mullenix for a ride home. On the way home with plaintiff in her car, Mullenix lost control, and her car struck a tree. Plaintiff suffered severe injuries. About two hours after the accident, Mullenix was found to have blood alcohol content (BAC) of .205 percent.
*582 Plaintiff brought claims against Mullenix for negligent driving and against defendant, the operator of Duffy's, for serving Mullenix alcohol when she was visibly intoxicated.[1] Defendant moved for summary judgment based on the statute that makes plaintiff's contribution to Mullenix's intoxication an issue in plaintiff's case. As relevant here, ORS 471.565(2) provides:
"A person licensed by the Oregon Liquor Commission * * * is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:
"(a) The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and
"(b) The plaintiff did not substantially contribute to the intoxication of the patron or guest by:
"(A) Providing or furnishing alcoholic beverages to the patron or guest;
"(B) Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or
"(C) Facilitating the consumption of alcoholic beverages by the patron or guest in any manner."
(Emphasis added.) Defendant argued that plaintiff could not meet his burden to show that he had not substantially contributed to Mullenix's intoxication. Defendant argued that, if plaintiff had substantially contributed in any one of the three ways listed in the statute, then he could not recover. Defendant concluded that, because the undisputed facts showed plaintiff did furnish, encourage, or facilitate the consumption of alcohol, plaintiff could not satisfy an element of his claim, as a matter of law.
Plaintiff responded that there was a genuine issue of material fact whether he substantially contributed to Mullenix's intoxication. He argued that the question whether he "substantially contributed to the intoxication" was a *583 question that "requires a quantitative analysis." To that end, plaintiff focused on the amount of alcohol plaintiff bought Mullenix. Plaintiff offered the affidavit of Schreiner, a former police officer who was familiar with BAC testing. He opined, based on Mullenix's weight and gender, that a single 16-ounce Bud Light, consumed in 10 minutes on an empty stomach, would produce a BAC of .028 percent. Under the same circumstances, two such beers would produce a BAC of .057 percent. Three would produce a BAC of .085 percent. He calculated that, at her rate of consumption, three 16-ounce Bud Lights would produce a BAC between .048 and .070 percent. He concluded that, with that understanding, three such beers would not have caused Mullenix's level of intoxication *212 to be above the legal standard to drive-BAC of .08 percent.[2] "Using a quantitative analysis," with which he had considered only the effect of the beers from plaintiff in isolation and without regard for the combined effect with other alcohol, Schreiner opined that beers from plaintiff "did not substantially contribute to Ms. Mullenix's intoxication." Based on that affidavit, plaintiff argued that the evidence showed that he had only bought 10, 20, or 30 percent of the alcohol Mullenix consumed. He argued, "At best, plaintiff's purchase of alcohol minimally contributed to her level of intoxication." Therefore, he urged that a jury could conclude that one, two, or three beers did not "substantially contribute" to her intoxication.
Plaintiff has no memory of the evening. In his affidavit, he offered no disagreement with the particular facts in the witnesses' account of the evening, but, he attested, "I do not make a habit of encouraging social acquaintances to drink, play drinking games, take shots, or compel them to drink when they do not want to."
Responding to plaintiff's "quantitative" emphasis, the trial court observed that the ways in which a plaintiff might "substantially contribute" to intoxication are not as narrow as plaintiff assumes. The court recognized that the legislature allowed that, in addition to buying alcohol, *584 a plaintiff could contribute in other ways. As a result, the question was "whether or not the indisputable facts constitute clear and convincing evidence that plaintiff did not encourage Mullenix to consume or purchase alcohol 'in any other manner,' or whether plaintiff facilitated Mullenix['s] consumption of alcohol 'in any manner.' " The trial court concluded that there was no genuine issue of material fact that could permit a reasonable juror to find by clear and convincing evidence that plaintiff did not substantially contribute to Mullenix's intoxication. The court allowed summary judgment and granted a limited judgment dismissing the claims against defendant.
II. LAW
A. Standards for Decision
Like the trial court, we begin our review with an appreciation of the several standards that govern an assessment of the ultimate issue. When one party moves for summary judgment, "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." ORCP 47 C. The court should grant the motion if the pleadings and various filings "show that there is no genuine issue as to any material fact." Id . "No genuine issue as to a material fact exists if, based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party * * *." Id . In short, summary judgment is appropriate if undisputed facts would compel a jury to return a verdict for the moving party. Jones v. General Motors Corp ., 325 Or. 404, 414, 939 P.2d 608 (1997).
After noting those familiar standards, we recognize that, in this case, ORS 471.565(2)(b) imposes a burden on plaintiff to prove, as part of his claim, that he did not substantially contribute to the intoxication of the person who caused his injury. That burden is unusual because, in effect, plaintiff must prove a negative, and because plaintiff must do so by clear and convincing evidence.
As a preliminary matter, defendant raises a question concerning the role that the "clear and convincing" standard *585 of proof plays in our assessment of whether the case presents a genuine issue of fact for trial. According to defendant, that standard must be considered at the summary judgment stage and requires courts to consider the quantum of proof when ruling on the motion. Defendant argues that the legislature amended ORCP 47 in 1999 with the purpose of "federalizing" the rule. See Or. Laws, ch. 815, § 1 (amending ORCP 47 ). In doing so, defendant argues, the legislature adopted an approach to summary judgment endorsed by the United States Supreme Court in *213 Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986), which determined that a judge ruling on a summary judgment motion under the federal rules of civil procedure must "view the evidence presented through the prism of the substantive evidentiary burden." The Anderson court held, in the context of a libel claim, that a clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions. Id. at 255, 106 S.Ct. 2505.
Although we agree that, in part, the legislature intended to "federalize" ORCP 47 with its 1999 amendments, we disagree with defendant that the legislature meant to "federalize" ORCP 47 in the additional way that defendant contends. As we observed in Davis v. County of Clackamas , 205 Or. App. 387, 394, 134 P.3d 1090, rev. den. , 341 Or. 244, 142 P.3d 72 (2006), the 1999 amendments were intended to "federalize" ORCP 47 with respect to burden shifting . The amendments placed the burden of producing evidence on the party who would have the burden of persuasion at trial. Id. ("According to the legislative history underlying the amendment, it was intended to implement a burden shifting process similar to the federal rule as defined in Matsushita Elec. Ind. Co. v. Zenith Radio , 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986)"). However, defendant has not pointed us to legislative history that reflects legislative intention to "federalize" that would require Oregon courts to incorporate heightened evidentiary burdens on summary judgment when determining if a genuine issue of fact exists.
On that point, Oregon law does not support defendant's argument. This court and the Supreme Court have explained that the "clear and convincing" standard, by *586 which the plaintiff ultimately must persuade a factfinder, is distinct from the "some evidence" or "any evidence" standard by which courts evaluate whether an issue must await a jury. That is to say, the "clear and convincing" standard does not change the standard of "some evidence" or "any evidence" when considering whether a party has produced evidence sufficient to show a genuine dispute of material fact. See Bolt v. Influence, Inc. , 333 Or. 572, 579-80, 43 P.3d 425 (2002) (explaining, in the context of a statute that incorporated the "directed verdict" standard from Oregon law, that "the 'clear and convincing' burden of proof in [the statute], which refers to the ultimate burden of proof that a plaintiff must meet to recover punitive damages, has no relation to the burden associated with the 'directed verdict' standard used to review the sufficiency of evidence * * *" (emphasis added) ); Hamlin v. Hampton Lumber Mills, Inc. , 222 Or. App. 230, 236 n. 3, 193 P.3d 46 (2008), rev'd on other grounds , 349 Or. 526, 246 P.3d 1121 (2011) (citing Bolt and explaining that "[t]he 'any evidence' standard is the appropriate standard of review for the denial of a directed verdict, regardless of whether the underlying claim requires a clear and convincing standard"); Knepper v. Brown , 213 Or. App. 598, 604 n. 1, 162 P.3d 1026 (2007), aff'd , 345 Or. 320, 195 P.3d 383 (2008) ("We have stated that the clear and convincing standard of proof 'relates to how a jury weighs the evidence, not to how a trial court assesses the capability of the evidence to establish facts.' Faber v. Asplundh Tree Expert Co. , 106 Or. App. 601, 606, 810 P.2d 384, rev. den. , 312 Or. 80, 816 P.2d 610 (1991)"); Faber , 106 Or. App. at 606 n 4, 810 P.2d 384 (stating the general rule that the clear and convincing standard does not relate to how a trial court assesses the capability of evidence to establish the facts, but noting that there "may be exceptions to this general proposition") (citing Santosky v. Kramer , 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982) ).
Although the cases cited here have involved the "directed verdict" standard, we see no reason why a court's review at the summary judgment stage would be different. See generally Seeborg v. General Motors Corp. , 284 Or. 695, 700, 588 P.2d 1100 (1978) ("In deciding whether a genuine issue of fact exists, courts generally read 'genuine issue' to mean 'triable issue.' Before a party has a triable issue, he *587 or she must have sufficient evidence to be entitled to a jury determination. This has led both courts and commentators to compare the motion for summary judgment to the motion for a directed verdict."); accord *214 Staten v. Steel , 222 Or. App. 17, 34, 191 P.3d 778 (2008), rev. den. , 345 Or. 618, 201 P.3d 909 (2009) (observing, even after the 1999 amendments to ORCP 47, that "[i]n the federal system, the trial judge's role in assessing evidence adduced in a summary judgment proceeding is more 'evaluative' than the function of his or her counterpart in Oregon's courts").
Contrary to defendant's argument for a fully "federalized" approach, Oregon courts do not determine summary judgment with the "clear and convincing" evidence standard in mind. Rather, the court determines whether there is "some evidence" or "any evidence" that presents a genuine issue of material fact for a jury to resolve. See ORCP 47 C (genuine issue of material fact); Bolt , 333 Or. at 579-80, 43 P.3d 425 ("some evidence" or "any evidence" presents jury question). Although, in this case, plaintiff has a heightened burden of proof at trial and has a burden of coming forward on summary judgment, plaintiff need only show "some evidence" to raise a genuine issue of material fact.
Nevertheless, the substantive requirement of ORS 471.565(2)(b) remains a serious issue for plaintiff on summary judgment, because it is made part of plaintiff's case, it requires proof of a negative, and, as we will explain, it is drafted in a way that encompasses a broad range of conduct. As noted, ORS 471.565(2)(b) imposes a burden on plaintiff to prove at trial that he did not "substantially contribute" to the intoxication of the person who caused his injury. Thus, summary judgment is required if the undisputed facts would compel a jury to conclude that plaintiff failed to prove that he did not "substantially contribute" to the wrongdoer's intoxication. See Jones , 325 Or. at 414, 939 P.2d 608 (when summary judgment is appropriate); ORCP 47 C ("No genuine issue as to a material fact exists if * * * no objectively reasonable juror could return a verdict for the adverse party on the matter * * *."). Plaintiff must come forward with evidence sufficient to permit a jury to find that he did not substantially contribute to the intoxication in any of the ways listed in the *588 statute. ORCP 47 C. If plaintiff fails to do so, then the court must grant summary judgment.
B. To "Substantially Contribute" to Intoxication
As they did below, the parties offer fundamentally different understandings of what it means to "substantially contribute" to the intoxication of a patron or guest by "(A) Providing or furnishing alcoholic beverages to the patron or guest; (B) Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or (C) Facilitating the consumption of alcoholic beverages by the patron or guest in any manner." ORS 471.565(2)(b). In plaintiff's view, subparagraphs (A), (B), and (C) of the statute identify ways that a plaintiff might contribute to a patron or guest's intoxication, but the conduct described in those subparagraphs will not bar the plaintiff's claim unless that conduct actually played a role in the intoxication. Defendant, on the other hand, argues that those subparagraphs eliminate that type of particularized inquiry into the role that a plaintiff's conduct played. Instead, in defendant's view, subparagraphs (A), (B), and (C) list conduct that by definition "substantially contributes" to the intoxication of the patron or guest. In other words, according to defendant, any provision or furnishing of alcohol, any encouragement, or any facilitating of the consumption of alcohol by the patron or guest not only contributes but substantially contributes so as to bar a plaintiff's claim under ORS 471.565(2)(b).
The parties' competing contentions raise a question of statutory interpretation, which we resolve by examining the text of ORS 471.565(2)(b) in context along with any pertinent legislative history, relevant case law, and other aids to construction. See Unger v. Rosenblum , 362 Or. 210, 221, 407 P.3d 817 (2017) (summarizing the template for interpretation set forth in State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009) ).
Starting with the text of ORS 471.565(2)(b), we observe that defendant's proposed interpretation-that subparagraphs (A) through (C) fully define the contours of "substantially contributes"-finds little support in the words or structure of the statute.
*215 The statute requires the plaintiff to *589 prove that he or she did not "substantially contribute" to the patron or guest's intoxication "by" the listed subparagraphs (A) through (C), which are set off by a colon. If, as defendant contends, those subparagraphs set forth conduct that automatically bars a plaintiff's claim, the word "substantially" is superfluous. As a general rule, we "assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." State v. Clemente-Perez , 357 Or. 745, 755, 359 P.3d 232 (2015).
Instead, when construing a statute, we attempt to give meaning to each of the statute's terms. See State v. Cloutier , 351 Or. 68, 98, 261 P.3d 1234 (2011) ("[I]f possible, we give a statute with multiple parts a construction that will give effect to all of those parts." (Internal quotation marks omitted.) ). Accordingly, where the legislature has expressed no contrary intent, we assume that it intended the words "substantially" and "contribute" to have some meaning in the statute.
The difficulty lies in determining what meaning that is. Neither "substantially" nor "contribute" is expressly defined in the statute. In its ordinary usage, "substantially" means "in a substantial manner : so as to be substantial," Webster's Third New Int'l Dictionary 2280 (unabridged ed. 2002), which can mean a range of things, from being "material," to "important, essential," to "soundly based : carrying weight," to "being that specified to a large degree or in the main." Id. "Contribute," in this context, ordinarily means to "add" or "to give or grant in common with others" or "furnish or supply." Id. at 496. The ordinary meaning of "substantially contribute" could encompass various combinations of those terms.
At the same time, "substantially contribute" and "substantial" have acquired more specialized meanings in some legal contexts-particularly in the tort context. See State v. Villagomez , 362 Or. 390, 395-96, 412 P.3d 183 (2018) (when a term has acquired a specialized, well-defined legal meaning, courts will presume that the legislature intended that meaning). For instance, at the time that ORS 471.565 (2)(b) was enacted, the term "substantially contributes" had appeared in Oregon tort cases involving multiple tortfeasors, *590 describing the degree of participation that would subject any single tortfeasor to liability. See, e.g. , McEwen v. Ortho Pharmaceutical Corp. , 270 Or. 375, 418, 528 P.2d 522 (1974) ("Nor is it essential to Syntex's liability that its negligence be sufficient to bring about plaintiff's harm by itself; it is enough that Syntex substantially contributed to the injuries eventually suffered by [the plaintiff]."); id. (citing, for that proposition, Escobedo v. Ward , 255 Or. 85, 91, 464 P.2d 698 (1970) ("In this case the question is whether defendant participated in creating a risk of harm to others who might be imperiled by the dangerous condition. If defendant participated substantially in creating the dangerous condition he would be liable for the entire harm, even though prior excavators had also contributed to the creation of the hazard. Restatement of Torts 434 § 875.") ); Purcell v. Asbestos Corp., Ltd. , 153 Or. App. 415, 422, 959 P.2d 89, adh'd to as modified , 155 Or. App. 1, 963 P.2d 729 (1998) (holding that causation requirement in torts case would be met by showing that defendants "substantially contributed" to plaintiff's disease).
Used in the tort context, the term was synonymous with "substantial factor," which was the commonly invoked test for determining whether a tortfeasor was a "cause-in-fact" of an injury-that is, whether the tortfeasor's conduct "in fact played a role in the occurrence." Sandford v. Chev. Div. of Gen. Motors , 292 Or. 590, 606, 642 P.2d 624 (1982) ("Causation in Oregon law refers to causation in fact, that is to say, whether someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence." (Emphasis added.) ); McEwen , 270 Or. at 418, 528 P.2d 522 (using the term "substantially contributed" in the context of a discussion about "whether the negligence of each [defendant] was a substantial factor in producing the complained of harm").[3] The same test for *216 factual causation was applied to a plaintiff's own conduct, as part of the assessment of contributory negligence before that doctrine was abolished by statute. See, e.g. , Turner v. Jentzen , 243 Or. 427, 430, 414 P.2d 316 (1966) ("If that were found to have been the case, a *591 jury could conclude that plaintiff's attempted turn was not a substantial factor contributing to the accident ." (Emphasis added.) ).
Although the term "substantial factor" (or synonymously, "substantially contribute") has been described as "amorphous," it was generally understood to refer "to an important or material factor, and not one that is insignificant." See Lyons v. Walsh & Sons Trucking Co., Ltd. , 183 Or. App. 76, 83 n. 5, 51 P.3d 625 (2002), aff'd , 337 Or. 319, 96 P.3d 1215 (2004) (noting that the Uniform Civil Jury Instructions defined a "substantial factor" as an "important or material factor and not one that is insignificant"). The term "substantial," the Supreme Court observed, "is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using the word in the popular sense, in which there always lurks the idea of responsibility * * *." Furrer v. Talent Irrigation District , 258 Or. 494, 511, 466 P.2d 605 (1970) (quoting Restatement (Second) of Torts § 431 comment a).
Considering that ORS 471.565(2)(b) is a tort-related statute, there is reason to believe that the legislature intended the term "substantially contribute" to carry the more specialized meaning that it has in the tort context: that the plaintiff's conduct was a significant and material factor in the intoxication, such that reasonable persons would regard it as a cause-in-fact of the intoxication. See Gresham State Bank v. O&K Const. Co. , 231 Or. 106, 120, 370 P.2d 726 (1962) (reasoning that the legislature's enactment of ORS 73.4060, which used the words "substantially contributes" in the context of negligence, employed "the test of factual causation; it is the equivalent of the 'substantial factor' test applied in the law of negligence generally" (citing Restatement § 433, at 733 (Supp. 1948), and Prosser on Torts , § 44, at 218-23 (2d ed. 1955) ) ). But, to the extent that the text and context of ORS 471.565(2)(b) leave doubts in that regard, they are resolved by the statute's legislative history.
As the Supreme Court explained in Deckard , 358 Or. at 790-91, 370 P.3d 478, the bill that became ORS 471.565(2)(b) -Senate Bill (SB) 925-was enacted in 2001 in response to *592 two cases: Grady v. Cedar Side Inn, Inc. , 330 Or. 42, 997 P.2d 197 (2000), and Fulmer v. Timber Inn Restaurant and Lounge, Inc. , 330 Or. 413, 9 P.3d 710 (2000). In both of those cases, the Supreme Court had declined to adopt what was generally known as the "complicity doctrine."
In Grady , the plaintiff was injured when the driver of the car in which he was riding lost control and crashed into a utility pole. The plaintiff and the driver, Elliot, were both intoxicated at the time of the accident and had been drinking together throughout the day. Their drinking started around 11:00 a.m., and, by 4:00 p.m., they arrived at a bar in Vernonia, where they were denied service because they were visibly intoxicated. They then crossed the street to the Cedar Side Inn, where the plaintiff and Elliot both drank. From there, they went to a minimart and left with a 12-pack of beer. Shortly after leaving the minimart, Elliot veered off the highway, struck a power pole, and flipped the car. 330 Or. at 44-45, 997 P.2d 197.
The plaintiff asserted claims against the Cedar Side Inn and the minimart and its owners for serving alcohol to Elliot when he was visibly intoxicated. In the trial court, the defendants moved for, and were granted, summary judgment on the ground that, "because plaintiff participated with Elliott in becoming intoxicated, he could not recover as a matter of law." Grady v. Cedar Side Inn, Inc. , 154 Or. App. 622, 626, 963 P.2d 36 (1998). We reversed the trial court's decision, concluding that the "plaintiff was entitled as a third party to maintain his action against defendants for their alleged negligence in *217 serving a visibly intoxicated patron other than plaintiff, without regard to plaintiff's 'innocence' or lack thereof." 330 Or. at 46, 997 P.2d 197 (describing this court's decision).
The Supreme Court granted review, explaining that "whether a plaintiff can recover against an alcohol provider for injuries caused by an intoxicated patron, notwithstanding the fact that the plaintiff participated in or was in complicity with the patron's intoxication by purchasing alcohol for him or her, is one of first impression for this court." Id. (emphasis added). The court then proceeded to describe *593 what was known in other jurisdictions as the "complicity doctrine":
"The rule that defendants urge this court to adopt is known in other jurisdictions as the 'complicity doctrine.' That doctrine precludes recovery by a third person bringing an action to recover damages for injuries caused by an intoxicated person if the third person contributes to the inebriate's intoxication. See, e.g. , Baxter v. Noce , 107 N.M. 48, 50, 752 P.2d 240 (1988) (explaining recognition of complicity doctrine in other jurisdictions). A person contributes to the intoxication of another, for example, either by purchasing alcohol for the intoxicated person or by consuming alcohol with the intoxicated person. Id. Many jurisdictions that recognize the complicity doctrine consider it to be a complete bar to recovery, despite the existence of comparative negligence statutes in the jurisdiction. See, e.g. , Jamieson v. Harrison , 532 N.W.2d 779, 781 (Iowa 1995) (dram shop claim not subject to comparative fault statute); Walter v. Carriage House Hotels, Ltd. , 164 Ill. 2d 80, 94-95, 207 Ill.Dec. 33, 646 N.E.2d 599 (1995) (in action under dram shop act, complicity acts as complete bar and comparative negligence is inapplicable); Herrly v. Muzik , 374 N.W.2d 275, 278-79 (Minn. 1985) (in action under dram shop act, complicity is absolute bar to recovery despite amendment incorporating comparative negligence statute). But see Baxter , 107 N.M. 48 at 51, 752 P.2d 240 ('Complicity, while superficially dissimilar, is only a hybrid form of contributory negligence and is identical to it in application.')."
Id.
After describing that doctrine, the Supreme Court declined to adopt it. The court explained that, by replacing contributory negligence with a comparative fault scheme, and by abolishing the doctrine of assumption of risk, the legislature had made a contrary policy decision whereby "plaintiff's relative fault in causing his own injuries, if any, is to be apportioned by the trier of fact, rather than serve as a bar to recovery ab initio ." Id .
In Fulmer , decided shortly after Grady , the plaintiffs sought to recover for injuries sustained on the defendants' premises after the defendants allegedly served alcohol to them while they were visibly intoxicated. The Supreme Court adhered to its reasoning in Grady , concluding that, *594 "[i]f this court were to hold that a plaintiff's consumption of alcoholic beverages constitutes negligence that bars a claim for injuries suffered as a result of the plaintiff's own intoxication," it would revive concepts of contributory negligence and assumption of risk. 330 Or. at 427, 9 P.3d 710.
The year after Grady and Fulmer were decided, the Oregon Restaurant Association proposed SB 925. In an exhibit submitted with the bill, the Oregon Restaurant Association made explicit its goal of legislatively overruling those two cases:
"Those two cases found, based on an earlier 1934 decision [in Ibach v. Jackson , 148 Or. 92, 35 P.2d 672 (1934) ], that a common law right of action against the server does exist in favor of a person who suffers injury resulting from his or her own voluntary consumption of alcohol. Grady also found that a person who substantially contributes to the intoxication of another has a common law claim for injuries caused by that intoxicated person against the server or provider of those alcoholic beverages.
"* * * * *
"SB 925 is not a bill that changes Oregon's comparative negligence laws or revives a contributory negligence or assumption of risk standard. It merely provides *218 that a person who claims damages against a server must prove that they did not substantially contribute to the intoxication of the person who injured them. SB 925 requires a finder of fact to look at the claimant's participation in the intoxication that resulted in injury to the claimant. SB 925 provides a clear standard for this review."
Exhibit E, House Committee on Judiciary, SB 925, May 5, 2001 (statement of Bill Perry, Director of Government Relations for the Oregon Restaurant Association).
On the Senate floor, the bill's carrier, Senator Minnis, read from that exhibit, stating that Grady had found that a person who "substantially contributes" to the intoxication of another has a common law claim against the server; that SB 925 overturns that result and clarifies that the law does not allow such a claim by a person who "substantially contributes" to a person's intoxication; and that the dram shop laws of Oregon were "designed to *595 protect innocent third parties who, through no fault of their own , are injured by intoxicated persons." Audio Recording, Senate Floor Debate, SB 925, Mar. 22, 2001, at 36.00 (comments of Sen. John Minnis), https://records.sos.state.or.us (accessed June 27, 2018) (emphasis added). Senator Minnis also repeated the assurance that the bill did not change Oregon's comparative negligence laws or revive a contributory negligence or assumption of risk standard; rather, "SB 925 requires a finder of fact to look at the claimant's participation in the intoxication that resulted in injury to the claimant" and "provides a clear standard for this review." Id. (emphasis added).
Although that legislative history does not provide a detailed explanation of the concept of "substantially contribute," it evidences that the drafters and carriers of the bill (1) equated "substantially contribute" with "fault" by the contributing party; (2) intended a "finder of fact to look at" the claimant's participation in the intoxication; and (3) understood that "substantially contribute" bore a relation to, but did not alter or revive, tort concepts of comparative negligence, contributory negligence, or assumption of risk. Taken together, that history indicates that the legislature intended a trier of fact to evaluate "substantially contribute" in a manner similar to the way that the factfinder assesses "fault" in other negligence contexts, albeit with regard to the plaintiff's role as a cause-in-fact of the intoxication rather than cause-in-fact of the plaintiff's injury .
That understanding of "substantially contribute" is also consistent with the overarching legislative intent to overturn Grady , thereby bringing a version of the "complicity doctrine" to Oregon. The sponsors of SB 925 were unquestionably familiar with Grady and the complicity doctrine described in Grady -a doctrine that generally tracked the principle that one who was a cause-in-fact of the intoxication was barred from recovery. For instance, in Baxter v. Noce , cited prominently in Grady for its explanation of the complicity doctrine, the defendants had urged the court to adopt a rule that would bar recovery by a plaintiff who had "participated to any material degree" in the intoxication; the court explained that "[s]ome jurisdictions have recognized *596 the defense of complicity, which bars recovery under a dramshop act to anyone who actively contributes to, procures, participates in, or encourages the intoxication of the inebriated driver." 107 N.M. at 50, 752 P.2d at 242 (emphases added). Similarly, in Walter v. Carriage House Hotels, Ltd. , also cited in Grady , 330 Or. at 47, 997 P.2d 197, the court explained that "the existence of complicity will depend on the specific facts of each case," and "where reasonable minds can differ as to the active and material nature of plaintiff's procurement of the inebriate's intoxication, the resolution of the complicity defense to dramshop liability should be left to the trier of fact." 164 Ill. 2d at 95-96, 207 Ill.Dec. 33, 646 N.E.2d at 606 (emphasis added). In light of that common-law backdrop, the legislature most likely used the term "substantially contribute" in its common-law negligence sense-that is, a significant and material factor.[4] *219 For all of those reasons, we are persuaded that the legislature intended the term "substantially contribute" to mean conduct that was a significant and material cause of the intoxication. Said another way, under ORS 471.565(2)(b), a person "substantially contribute[s] to the intoxication of the patron or guest" when the person's conduct, as described in subparagraphs (A) through (C) of the statute, is a significant and material factor in the patron or guest's intoxication, as opposed to a factor that a reasonable person would regard as insignificant.
Having settled on the meaning of "substantially contribute," we turn to the question of what conduct is actually encompassed by the subparagraphs of the statute. ORS 471.565(2)(b)(A) bars recovery by a plaintiff who substantially contributed to the intoxication of the patron or guest by "[p]roviding or furnishing alcoholic beverages to the patron or guest." The terms "providing" or "furnishing" have relatively straightforward meanings in this context: To "provide" means "2 a: to fit out or fit up : EQUIP-used with *597 with< provided the children with the books they needed> < ~ the car with a radio> b : to supply for use : AFFORD, YIELD < olives ... ~ an important item of food-W. B. Fisher>[.]" Webster's at 1827. Similarly, to "furnish" is "to provide or supply with what is needed, useful, or desirable." Id. at 923. The two terms generally are synonymous. Id. at 924, 1827; see Thomas Creek Lumber and Log Co. v. Dept. of Rev. , 344 Or. 131, 138, 178 P.3d 217 (2008) (explaining that, notwithstanding the general presumption that the legislature did not intend redundancy, "nothing prohibits the legislature from saying the same thing twice").
As used in the context of alcoholic beverages, the terms are understood consistently with that ordinary meaning: Furnishing or providing alcohol includes directly or indirectly supplying a person with alcoholic beverages, including through purchasing and making available the alcohol. See Baker v. Croslin , 359 Or. 147, 158, 376 P.3d 267 (2016) (" '[P]rovided' [as used in ORS 471.565(2)(a) ] can be taken to include more general and less direct action. We can see no reason, for example, why the term would not apply to situations in which a social host purchases alcohol and makes it available for guests, who may help themselves."); see generally Black's Law Dictionary 675 (6th ed. 1990) ("As used in the liquor laws, 'furnish' means to provide in any way, and includes giving as well as selling."). Thus, under subsection (A), a plaintiff "substantially contributes" to the intoxication of a patron or guest when the plaintiff has directly or indirectly supplied alcoholic beverages to the patron or intoxicated person, whether by sale or gift, and that act was a significant and material factor in the patron or guest's intoxication.
Subparagraph (B) addresses the conduct of "[e]ncouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner." ORS 471.565(2)(b)(B). When used in the context of "encouraging" another's actions, the verb "encourage" is commonly understood to mean "to spur on" or "incite"; it "suggests generally instilling with courage, confidence, and purpose or fostering enough of these characteristics by advice, inducement, or similar influence to perform or endure as indicated."Webster's at 747. Consistently with that ordinary meaning, it has long been *598 used in Oregon law to describe the type of secondary participation that will subject a person to liability for the conduct of another. See, e.g., Granewich v. Harding , 329 Or. 47, 53, 985 P.2d 788 (1999) (explaining that Oregon negligence law is consistent with section 876 of the Restatement (Second) of Torts (1979), which provides that persons acting in concert may be liable for one another's torts if they "give substantial assistance or encouragement to the other"); State v. Rosser , 162 Or. 293, 344, 91 P.2d 295 (1939) ("An 'aider and abettor' is one who advises, counsels, procures, or encourages another to commit a crime, though not personally present at the time and place of the commission of the offense"); accord Black's Law Dictionary at 527 ("In criminal law, to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise *220 confidence; to make confident; to help; to forward; to advise. See Aid and abet.").
When "encouraging" is used in conjunction with "to consume or purchase alcoholic beverages," it unambiguously encompasses conduct that directly incites or emboldens the patron or guest to buy or drink alcoholic beverages, such as offering to buy a later round of beers or daring someone to consume another shot of whiskey. Less clear, however, is whether "encouraging" a patron or guest "to consume or purchase" would encompass more indirect means of encouraging those same activities, such as by acting as a drinking companion during the patron or guest's drinking activities. However, the remaining text of subparagraph (B) convinces us that the legislature did intend for "encouragement" to sweep that broadly.
The final phrase of subparagraph (B) refers to encouraging the patron or guest "in any other manner." ORS 471.565(2). That open-ended phrase demonstrates the intention to expand the universe of activities that might be considered "encouragement" under the statute. The question is how expansive, given the infinite manners of encouragement that one person might provide to another. Read in context, we understand the phrase, although broad, to be cabined in two respects.
First, the preceding terms-encouraging the patron or guest "to consume or purchase alcoholic beverages"-are *599 at least illustrative of, and serve to clarify, the universe of "other manners" of encouragement that the legislature had in mind. See, e.g. , Price v. Lotlikar , 285 Or. App. 692, 698, 397 P.3d 54 (2017) (citing Daniel N. Gordon, PC v. Rosenblum , 361 Or. 352, 365, 393 P.3d 1122 (2017) (explaining how examples provide context relevant to terms within a statute even outside the formal structure of ejusdem generis ); and Johnson v. Gibson , 358 Or. 624, 629-30, 369 P.3d 1151 (2016) (explaining the noscitur a sociis textual canon, whereby the meaning of an unclear word may be clarified by other words in context) ). And, second, the text of paragraph (b) makes clear that any encouragement must be of a type that substantially contributes "to the intoxication of the patron or guest." (Emphasis added.)
That statutory context persuades us that the legislature intended "any other manner" of encouraging in subparagraph (B) to share an important characteristic with encouraging the consumption or purchase of alcoholic beverages: namely, that the encouragement is related to the patron or guest's drinking activities. Thus, read as a whole, we understand ORS 471.565(2)(b)(B) to bar recovery by a plaintiff who has engaged in conduct that encouraged the patron or guest to purchase alcoholic beverages, drink alcoholic beverages, or otherwise engage in drinking activities, such as drinking with the person or "bar hopping."
That more expansive view of "encouragement" is not only consistent with the broadly worded text of the statute, but with its legislative history. As described above, that history evinces a clear intention to overturn Grady and bring a complicity doctrine to Oregon. In Grady , the court had offered the following examples of contributions that trigger that doctrine, one of which was drinking with the intoxicated person: "A person contributes to the intoxication of another, for example, either by purchasing alcohol for the intoxicated person or by consuming alcohol with the intoxicated person ." 330 Or. at 47, 997 P.2d 197 (emphasis added). That is also how the complicity doctrine was characterized in exhibits submitted with the bill:
"Defendants in the Grady case urged the Court to adopt what is known in other jurisdictions as the 'complicity *600 doctrine,' which precludes recovery by a third person bringing an action to recover damages for injuries caused by an intoxicated person if the third person contributes to the inebriate's intoxication by either purchasing alcohol for the intoxicated person or by consuming alcohol with the intoxicated person ."
Exhibit A, Senate Judiciary Committee, SB 925, Mar. 13, 2001 (letter from attorney Michael Mills, on behalf of Oregon Restaurant Association, included with materials submitted by Bill Perry (emphasis added) ); id . (describing a "second kind of claims" by "passengers who are injured as a result of an *221 intoxicated driver's negligence" and "may have drank with them throughout the day, encouraged them to drink, and actually paid for all or part of the intoxicating beverages served"). The broad text regarding "encouragement" appears to have been an effort to bring that understanding of the complicity doctrine to Oregon, thereby barring recovery by a plaintiff who substantially contributed to the patron or guest's intoxication by drinking with that patron or guest.[5]
The final subparagraph of ORS 471.565(2)(b) bars recovery by a person who substantially contributes to intoxication by "[f]acilitating the consumption of alcoholic beverages by the patron or guest in any manner ." (Emphasis added.) The ordinary meaning of "facilitate" is "to make easier or less difficult" or "to lessen the labor of (as a person): ASSIST, AID," Webster's at 812, and it generally has the same meaning when used in the law, see Black's Law Dictionary at 590 (defining "facilitate" as "[t]o free from difficulty or impediment"). Like the word "encouragement," the word "facilitate" has long been employed in Oregon law to *601 describe liability for the conduct of another-typically, liability for criminal conduct of another. See ORS 161.155(2) (providing that a person is criminally liable for the crime of another for various acts done "[W]ith the intent to promote or facilitate the commission of the crime"); Buchler v. Oregon Corrections Div. , 316 Or. 499, 511-12, 853 P.2d 798 (1993) (explaining that "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it").
In both the criminal law and tort law contexts, the word "facilitate" connotes conduct undertaken with an awareness of making an outcome easier or less difficult, as opposed to conduct that unwittingly helps achieve that outcome. As the Supreme Court recently explained in State v. Morgan , 361 Or. 47, 55, 388 P.3d 1085 (2017), common synonyms of "facilitate"-such as "aid" and "assist"-"typically connote an intent to facilitate an outcome. If one were to describe a person as 'assisting' another, the listener would immediately wonder what outcome the individual was trying to achieve. * * * To connote assistance without the intent to facilitate the outcome, one generally would use an additional modifying adverb, such as 'unintentionally' or 'unwittingly.' " The same can be said of "facilitate"; without an additional modifier such as "unintentionally" or "unwittingly," the phrase "facilitating the consumption of alcoholic beverages" connotes an awareness by the plaintiff that his or her conduct is aiding or assisting the intoxicated person's consumption of alcohol. Cf. Buchler , 316 Or. at 511, 853 P.2d 798 (using the qualified term "mere facilitation" to describe circumstances where the defendant unwittingly aided the tortious conduct).
Although we are not aware of any legislative history that directly illuminates the legislature's use of "facilitating," we observe that, in the context of dram shop liability more generally, the concept of "facilitating the consumption of alcoholic beverages" was used consistently with its ordinary meaning, as a way to describe actions aimed at making it easier for drinkers to consume alcohol, such as retrieving drinks at a bar[6] or providing *222 fake identification *602 to minors.[7] That case law, which is consistent with the way that "facilitate" has been used in Oregon law, further suggests that "facilitating" in this context refers to knowingly making it easier for the intoxicated person to consume alcoholic beverages.
Thus, read as a whole, and in the broader context of dram shop liability cases, the text of subparagraph (C) conveys the legislature's intention to bar recovery by a plaintiff who knowingly acted in any manner to make it easier for the intoxicated person to consume alcoholic beverages, if that facilitation substantially contributed to the intoxication.
III. APPLICATION
With that understanding of "substantially contribute" under subparagraphs (A) through (C), we turn to the summary judgment record. And in evaluating that record, one point bears additional emphasis: the burden of production and persuasion. Unlike other jurisdictions, where the complicity doctrine operates as a defense to a plaintiff's claim, ORS 471.565(2)(b) imposes the burden on the plaintiff to disprove complicity as part of the plaintiff's claim. In other words, as we explained earlier, 292 Or. App. at 584-85, ORS 471.565(2)(b) puts the burden on the plaintiff to prove a negative-that the plaintiff did not substantially contribute to the patron or guest's intoxication in any of the ways specified in subparagraphs (A) through (C).
To meet that burden, a plaintiff must produce evidence that would allow a nonspeculative finding that the plaintiff's conduct did not substantially contribute to the patron or guest's intoxication. See Brant v. Tri-Met. , 230 Or. App. 97, 104, 213 P.3d 869 (2009) (to survive a motion for summary judgment, the party with the burden of proving a claim must present evidence that gives the factfinder a basis "other than sheer speculation" to conclude that the elements of the claim have been met). Whether a factual finding is based on reasonable inference, or would instead require *603 impermissible speculation, will depend on the broader circumstances of each case.
For instance, if the nature of the accident itself suggests no obvious connection between the plaintiff and the intoxicated person who caused the injury-e.g. , a patron driving home drunk from a bar, crossing into oncoming traffic, and injuring an oncoming driver on the road-that oncoming driver, as a plaintiff, could survive a summary judgment motion under ORS 471.565(2)(b) with a declaration stating only that plaintiff had no interactions with the intoxicated person on the day of the injury. From that evidence alone, a factfinder could reasonably infer that the plaintiff had not substantially contributed to the other's intoxication in any of the ways listed in the statute.
At the other end of the spectrum are cases in which there is an apparent connection between the plaintiff and the other's intoxication. As discussed above, the legislature drafted the subparagraphs of the statute concerning "encouraging" and "facilitating" broadly, and those subparagraphs reach a range of potential conduct that might occur when the plaintiff spends the hours immediately preceding the injury with the intoxicated patron or guest, such as buying rounds of drinks for the group or engaging in any other conduct during that time that, under the circumstances, spurs the patron or guest's purchase or consumption of alcohol or makes it easier for the patron or guest to consume alcohol. Relatedly, an affirmative finding that any such conduct was not a significant and material factor in the patron or guest's intoxication will depend on the broader circumstances of the intoxication-namely, the existence of facts that make it more likely than not that the plaintiff's conduct, even if encouraging the purchase or consumption of alcohol or facilitating its consumption, was not a significant and material factor given the overall circumstances of the case.
*223 Here, plaintiff acknowledges that he, Mullenix, and Hidaro were at the bar together from 9:00 p.m. to 2:00 a.m., drinking and socializing, that plaintiff bought between three and five rounds of drinks for the group during that time, and that he purchased between one and three beers for Mullenix before the accident. That conduct, depending on *604 the other surrounding circumstances at the bar, could have encouraged or facilitated Mullenix's intoxication within the meaning of subparagraphs (B) and (C). But rather than offering evidence that would establish those additional circumstances-i.e. , what else did or did not occur at the bar on the evening in question-plaintiff essentially points to the lack of evidence on those points.[8]
In his opening brief, plaintiff's argument regarding "encouraging" or "facilitating" states:
"According to the evidence on this record, other than the 1-3 drinks he purchased for Mullenix, the only way [plaintiff] 'encouraged' anything was by sitting and socializing and buying himself beer. There was no evidence that he 'urged' or 'persuaded' Mullenix to drink, or that he 'facilitated,' 'aided' or 'assisted' her to consume alcohol."
(Emphasis added.) He makes the same type of assertion in his reply brief:
"Plaintiff presented evidence that his purchase of one to three beers could not have made a substantial contribution to the intoxication of Mullenix. There is no direct evidence that he 'encouraged' or 'facilitated' her intoxication in other ways , and [defendant's] argument to the contrary requires that human behavior be characterized and evaluated and inferences drawn from it. This is the role of a jury."
(Emphasis added.)
Those arguments fail to account for the unusual burden of production and persuasion under ORS 471.562 (2)(b), which requires the plaintiff, not the defendant, to *605 establish the circumstances surrounding the plaintiff's role in the intoxication of the patron or guest. Although plaintiff asserts by way of argument that "the only way" he encouraged anything was "by sitting and socializing and buying himself beer," he does not offer any evidence that would allow the jury to make a finding about the nature and extent of his socializing or purchases of beer, or to conclude that it was as limited as he contends. Where there is no evidence as to when the rounds were purchased; what, if anything, was said or implied about continued purchases or consumption; or the degree to which plaintiff's companionship and continued drinking influenced Mullenix's own decision to purchase or consume alcoholic beverages, that hole in the record cuts against plaintiff with regard to whether he substantially contributed to her intoxication. Without additional evidence that would allow the jury to evaluate the specific nature and context of their drinking activities, a trier of fact would be required to speculate about whether plaintiff did anything to encourage or facilitate the purchase or consumption of alcohol within the meaning of ORS 471.565(2)(b)(B) and (C) and the role, if any, that conduct did or did not play in Mullenix's intoxication.[9] *224 We recognize that it may be difficult for someone in plaintiff's position, who has been drinking and socializing with the intoxicated tortfeasor before the injury, to prove a negative with regard to the plaintiff's contribution to the intoxication. But that is the policy choice that the legislature has made by drafting the statute to broadly encompass "any" manner of encouraging or facilitating the consumption of alcoholic beverages, and by then placing the burden *606 of proof on the plaintiff rather than adopting the complicity doctrine as an affirmative defense. Our role is to apply the statute as it is written, not to second guess that policy decision.
In sum, because plaintiff failed to come forward with evidence from which a reasonable trier of fact could find that he did not substantially contribute to Mullenix's intoxication during the hours they spent drinking and socializing together, the trial court correctly granted defendant's motion for summary judgment.
Affirmed.

Plaintiff brought both common law and statutory liquor liability claims. A subsequent decision of the Oregon Supreme Court determined that the statute did not create a statutory claim. Deckard v. Bunch , 358 Or. 754, 757, 370 P.3d 478 (2016).

Schreiner also calculated that, to achieve her later BAC of .205 percent, Mullenix would have to have consumed about 11.7 (plus or minus 1.8) 16-ounce beers.

See also Lasley v. Combined Transport, Inc. , 351 Or. 1, 8, 261 P.3d 1215 (2011) (decided after ORS 471.565(2)(b) was enacted but explaining the "substantial factor" test that has been applied in Oregon for decades).

We acknowledge that the "complicity doctrine" was not entirely uniform among the jurisdictions that applied it. Nonetheless, we understand the legislature's insertion of the word "substantially" before "contribution" to generally track those cases that required a "material" contribution as described in Walter , as opposed to a per se rule that certain acts will bar recovery, no matter how insignificant the contribution to intoxication.

As previously noted, the complicity doctrine was not uniform at the time that Grady was decided or when SB 925 was enacted, and there was,
"considerable conflict in the cases as to whether participating in the drinking which led to the intoxication which produced injury justifies the denial of recovery; some cases deny recovery on the basis of mere participation, while others hold that recovery should be denied only where the plaintiff in some way actively induced the drinking."
Third Person's Participating in or Encouraging Drinking as Barring Him from Recovering under Civil Damage or Similar Acts , 26 A.L.R. 3d 1112 (1969). For that reason, the best evidence of what the legislature understood to be the contours of the complicity doctrine are found in the textual clues in SB 925 itself and the descriptions of the doctrine in Grady and exhibits to SB 925.

Walter , 239 Ill. App. 3d at 722, 180 Ill.Dec. 593, 607 N.E.2d 662 ("In Parsons , the plaintiff facilitated her husband's intoxication by serving him 14 to 16 beers. Although Mrs. Parsons did not purchase the alcohol, she went to the bar and retrieved each round of drinks for her husband.").

Panagakos v. Walsh , 434 Mass. 353, 353, 749 N.E.2d 670, 671 (2001) (addressing allegations that the defendants "facilitated Paquet's illegal consumption of alcohol by supplying him with a falsified identification that overstated his age").

The dissent asserts that "in evaluating this summary judgment record on appeal, plaintiff bore no burden to produce evidence relevant to how we now interpret the statute." 292 Or. App. at 608 (James, J., dissenting). We disagree. Defendant's motion put at issue whether any "reasonable fact finder could reach any conclusion except that Plaintiff substantially contributed to Mullenix's intoxication in one or more ways set out in ORS 471.565(2)(b)." Because plaintiff would have the burden of persuasion at trial on that issue, he had the burden to come forward with evidence sufficient to create a genuine issue of material fact as to whether he substantially contributed to Mullenix's intoxication in the ways set out in ORS 471.565(2)(b)(A), (B), or (C). See Two Two v. Fujitec America, Inc. , 355 Or. 319, 324, 325 P.3d 707 (2014) ("[U]nder ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue 'raised in the motion' as to which the adverse party would have the burden of persuasion at trial.").

We note, as we did earlier in this opinion, 292 Or. App. at 583, that plaintiff submitted an affidavit in which he averred, "I do not make a habit of encouraging social acquaintances to drink, play drinking game, take shots, or compel them to drink when they do not want to." Plaintiff has not relied on that averment in his arguments in this court, and correctly so; the averment is too generalized for a factfinder to make any findings about what actually occurred during hours in which plaintiff was socializing and drinking with Mullenix.
Furthermore, because our analysis turns on plaintiff's failure of proof with regard to subparagraphs (B) and (C), we need not decide whether plaintiff's proffered expert testimony from Schreiner, which concluded that plaintiff's "purchase of 1 to 3 beers did not substantially contribute to Ms. Mullenix's intoxication," was sufficient to create a genuine issue of fact as to whether plaintiff substantially contributed by "[p]roviding or furnishing alcoholic beverages to the patron or guest" under subparagraph (A).